Theresa **MCDONALD** Plaintiff,

v.

Donald **RUMSFELD**, Secretary, U.S. Department of Defense Defendant.

No. CIV. A. 01–338–A.

United States District Court, E.D. Virginia. Alexandria Division.

Oct. 18, 2001.

Michael Jackson Beattie, Michael J. Beattie and Associates, Fairfax, VA, Robert Allan Swick, Brincefield Hartnett Maloof & Paleos PC, Alexandria, VA, for Theresa McDonald.

Edward J. Martin, United States Department of Defense, U.S. Attorney's Office, Alexandria, VA, Mark David Maxwell, U.S. Attorney's Office, Alexandria, VA, for Donald Rumsfeld.

## MEMORANDUM ORDER

LEE, District Judge.

Before the Court are two Motions for Summary Judgment submitted by the Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure on the Plaintiff's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* For the reasons discussed below, Defendant's Motions for Summary Judgment are both DENIED.

The issues before the Court are whether a genuine issue of material fact exists as to:(1) whether Plaintiff McDonald has stated a prima facie retaliation claim demonstrating a causal connection between her protected Equal Employment Opportunity ("EEO") activity and the deletion of her position and demotion; and (2) whether Defendant Rumsfeld's legitimate non-retaliatory reason for deleting McDonald's position and demotion was a pretext for retaliation in response to McDonald's EEO complaints.

For the reasons stated in open court on September 27, 2001, and elaborated below, this Court finds material issues of fact exist concerning the deletion of McDonald's position and her demotion. McDonald has submitted evidence demonstrating a causal connection between her EEO activity and the Defendant's adverse action against her. Further, McDonald has provided evidence indicating that the Defendant's asserted reason for the adverse action was a pretext for discrimination. Accordingly, summary judgment in favor of the Defendant is inappropriate and both motions are denied for the reasons stated herein.

## I. Background

Plaintiff Theresa McDonald began working for the Army and Air Force Exchange Service ("AAFES") in 1990. In 1993, McDonald accepted a position as Assistant Safety and Security Manager for the Beltway area. Walt Edwards was her immediate supervisor. During McDonald's employment with the AAFES under Edwards, she encountered several uncomfortable situations, which she alleges were sexual harassment. These situations led McDonald complaining to an EEO counselor about sexual harassment by Edwards in May of 1995. McDonald again complained to an EEO counselor in August 1995 that Edwards and Larry Reinman and Bryan Dumont had engaged in sexual harassment. Although McDonald was provided with two notices of her right to file a formal discrimination complaint, she failed to do so. (Mem. in Supp. of Def.'s Mot. to Dismiss and Summ. J., May 18, 2001, Attach. 3, Letter from Marcia Drane to Edward Younger of Jan. 15, 1998).

In 1996, McDonald began working as a Mobile Video Surveillance ("MVS") Specialist in the Loss Prevention Department of AAFES at Fort Belvoir, Virginia. According to McDonald, the harassment continued. In response, McDonald contacted an EEO counselor for the third time in November 1997. On December 1997, McDonald filed a formal EEO complaint, again naming Edwards, Reinman and Dumont, as well as supervisor Joe Thompson, and a Colonel Akana.[1] According to McDonald's physician, as result of these episodes of sexual harassment, McDonald experienced major depression and post traumatic stress disorder. (McDonald Aff. June 8, 2001, Ex. 1, Stat. of Dr. Murray Cohen). From September 1997 to December 1998, McDonald was on sick leave due to her psychological distress. (*Id.*, Ex. 2, Letter from Jay Hutto to Michael Beattie of May 10, 1999). During this period, she received workers compensation benefits because of her mental distress. (*Id.*).

In August 1998, Colonel George W. Pease became the Director of Loss Prevention at AAFES Headquarters. As part of his duties, Colonel Pease is responsible for the management of the MVS program. (Pease Decl. at 1). After becoming Director, Col. Pease was ordered by his superiors to reduce the Loss Prevention Division 1999 budget by .5% of its 1996 budget. *Id.* at 2. Based on the recommendations of several managing officers, Col. Pease decided to eliminate McDonald's MVS Specialist position because he understood it had been vacant from September 1997 to December 1998. *Id.* One of the four senior officers Col. Pease relied on to make the decision was Thomp-

---

**1.** McDonald's EEO Complaint was dismissed in April 1998 because McDonald apparently failed to timely exhaust her remedies. (Mem. in Supp. of Def.'s Mot. to Dismiss and Summ. J., May 18, 2001, Attach. 5). McDonald did not appeal this decision, although she claims that she was unaware of its dismissal.

son, head of the MVS team. (Pease Dep. at 12–14). The timing of the decision to eliminate McDonald's position is unclear.[2]

McDonald returned to work on December 21, 1998, after her doctor released her. Immediately upon her return, McDonald asserts that Thompson ordered that she return home until she obtained a complete release. (McDonald Aff. June 8, 2001, at 1). In April of 1999, McDonald received her advance notice of the deletion of her position and demotion due to reduction in force ("RIF"). The notice alerted McDonald that she was being demoted from her current position as MVS Specialist to a Supervisory Exchange Safety and Security Technician position. Although McDonald's salary remained the same after the demotion, her new position dropped from a payband of 4(1) to 3(1), which effectively precluded her from any opportunity for further advancement or pay raises. McDonald's final notice of demotion was issued in June 1999.

On March 2, 2001, McDonald filed a Complaint in this Court against Defendant Donald Rumsfeld, as the Secretary of the Department of Defense, alleging gender discrimination (Count I), sexual harassment and hostile work environment (Count II), and retaliatory demotion (Count III) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. McDonald also alleged violations under the Equal Pay Act, 29 U.S.C. §§ 206, *et seq*. (Count IV), and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (Count V).

Rumsfeld brought a motion to dismiss, or in the alternative for summary judgment, on May 18, 2001, seeking to dismiss all of McDonald's claims. On June 9, 2001, this Court dismissed all of McDonald's Complaint, except for McDonald's retaliation claim (Count III). In his summary judgment motion, Defendant maintained that the catalyst for the deletion of McDonald's position and her demotion was Col. Pease's conclusion that the appropriate step to addressing the 1999 budget concerns was to eliminate the vacant position of MVS held by McDonald. Rumsfeld argued that McDonald had not provided any evidence to rebut the Defendant's non-discriminatory rationale for her demotion. The Court deferred ruling on the retaliation claim because discovery had yet to begin and it was possible that items found in discovery could produce a material issue of fact that would preclude summary judgment.

While the first summary judgment motion was pending, Rumsfeld submitted a second motion to dismiss, or in the alternative for summary judgment, on September 14, 2001. With the benefit of additional discovery, Rumsfeld now claimed that McDonald failed to make a prima facie claim of retaliation because she could not demonstrate a causal connection between her EEO activity and her demotion. Rumsfeld based his claim on the argument that Col. Pease, the ultimate decisionmaker in this case, had no knowledge of McDonald's EEO activity.

This Court heard oral argument on Rumsfeld's first summary judgment motion on September 27, 2001. At the end of oral argument, the Court ruled from the bench, holding that there was a material issue of fact as to whether Defendant's rationale for demoting McDonald was pretext and denied Rumsfeld's first summary judgment motion. On October 12, 2001, this Court heard oral argument on Rums-

---

**2.** Pease asserts that he made the decision to delete the position before McDonald returned to work in November 1998. (Pease Decl. at 2). However, the actual submission date of the deletion of her position was January 11, 1999, and the approval of the deletion occurred on February 12, 1999. (Wells Dep. at 25).

feld's second summary judgment motion. The decision was taken under advisement.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing the evidence, the court must view the facts and inferences to be drawn in the light most favorable to the non-moving party. *Id.* at 588, 106 S.Ct. 1348.

## III. Analysis

This matter comes before the Court in an unusual posture. Ordinarily, a court reviewing a Title VII claim does not reach the pretext issue until after it has determined that the plaintiff has surpassed the hurdle of establishing a prima facie case of discrimination. However, in this case, Rumsfeld's first summary judgment motion was limited to whether McDonald could demonstrate that the Defendant's proffered rationale for her demotion was pretext for retaliation. Rumsfeld did not address Plaintiff's burden of stating a prima facie claim until his second summary judgment motion. In the interests of clarity and consistency, the Court will adopt the traditional track in evaluating a Title VII claim and first evaluate whether McDonald has stated a prima facie retaliatory claim under Title VII to withstand summary judgment. The Court will then turn to the issue of pretext raised in Defendant's first summary judgment motion. In addressing the latter, the Court will incorporate its bench ruling of September 27, 2001. As discussed below, Rumsfeld is not entitled to summary judgment on McDonald's retaliation claim as a matter of law because there remain several material issues of fact concerning the deletion of McDonald's position and her demotion.

### A. Prima Facie Claim

In order to state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity; (2) the employer acted adversely against the plaintiff; (3) and the protected activity was causally connected to the employer's adverse action. *Beall v. Abbott Lab.,* 130 F.3d 614, 619 (4th Cir.1997) (citing *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994)). The plaintiff has the burden of providing evidence of a causal connection between the adverse treatment and the protected activity. *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.1996). However, "[n]ormally, very little evidence of a causal connection is required to establish a prima facie case." *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998) (citing *Karpel v. Inova Health Sys. Services,* 134 F.3d 1222, 1228 (4th Cir.1998)). To survive summary judgement, the plaintiff must have evidence "from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998).

McDonald does not contest that Col. Pease was the final decisionmaker in this case. Col. Pease claims that he had no knowledge of McDonald's protected activity. (Pease Decl. at 2). McDonald has not presented any evidence contradicting this

point.[3] Further, Defendant claims that the recommendation to eliminate McDonald's position came from Robert Eaves, Chief of Policy and Procedures for the Loss Prevention Division. Eaves maintains that he was also unaware of McDonald's protected activity. (Eaves Decl. at 2). Pease and Eaves both assert that McDonald's EEO activity was not discussed at the budget meetings.

However, the Court's inquiry does not end there. To be sure, ordinarily, the relevant decisionmaker's knowledge of the plaintiff's EEO activity is integral to establishing a causal connection. *Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir.1998). But this case does not present the norm. The crux of McDonald's causation theory is not that Pease knew about McDonald's EEO activity, rather her position is that Thompson was aware of McDonald's EEO complaint against him and used his influence as a

senior official and advisor to Col. Pease to persuade him to eliminate McDonald's position.

■ "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996). Although, the Fourth Circuit has yet to specifically rule on this issue, this causal connection theory has been adopted by the majority of the federal circuit courts, beginning with the Seventh Circuit in Judge Posner's opinion in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) ("If the [formal decisionmakers] acted as the conduit of [the employee's] prejudice—his cat's paw—the innocence of the [decisionmakers] would not spare the company from liability.").[4] This Court will

---

**3.** McDonald claims Col. Pease should have known of McDonald's EEO activity because as Director of Loss Prevention, he should have been aware that McDonald was on leave on account of the emotional distress suffered from the sexual harassment she experienced at AAFES. Pease also should have been aware, McDonald asserts, of the EEO charges to the Loss Prevention Office for processing McDonald's EEO Complaint. However, McDonald does not present any evidence to substantiate these claims. For instance, McDonald does not provide any records that Pease's office processed the EEO Complaint.

**4.** *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir.2000) (citations omitted) ("[A] defendant may be held liable if the manager who discharged the plaintiff merely acted as a rubber stamp, or the 'cat's paw,' for a subordinate employee's prejudice, even if the manager lacked discriminatory intent."); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir.2000) ("[I]t is appropriate to tag the employer with an employee's age-based animus if the evidence indicates that worker possessed leverage, or exerted influence over the titular decisionmaker."); *Santiago–Ramos v. Centennial P.R.*

*Wireless Corp.*, 217 F.3d 46, 55 (1st Cir.2000) ( "discriminatory comments ... made by the key decisionmaker or those in a position to influence the decisionmaker" can be used by the plaintiff to establish pretext); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354–55 (6th Cir.1998) ("[Decisionmaker] rule was never intended to apply formalistically, and [thus] remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, [are] relevant."); *Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1312 (D.C.Cir.1998) ("[E]vidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence."); *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers."); *Azzaro v. County of Allegheny*, 110 F.3d 968, 973–74 (3rd Cir.1997) (circumstantial evidence demonstrating that county officials may have influenced county board members with no

follow suit and hold that it will look beyond who officially made the adverse employment decision to determine who actually made the decision or caused the decision to be made. Under circumstances indicating that the decisionmaker's determination may have been tainted by another supervisor or employee's discriminatory animus toward the plaintiff, it is appropriate to infer the causal connection if the evidence demonstrates that the supervisor or employee possessed leverage, or exerted influence, over the decisionmaker.

 Viewing the evidence in the light most favorable to McDonald, which is required of the Court at this stage, McDonald has demonstrated a genuine issue of material fact concerning whether Thompson influenced Col. Pease to eliminate McDonald's position. First, McDonald provides evidence that Thompson was aware of her protected activity. (Pl.'s Rule 56 Recitation of Disputed Factual Issues, Thompson EEO Investigation Aff. at 2).

Second, McDonald provides evidence demonstrating that Col. Pease relied on the advice of Thompson and others to delete McDonald's position. (Pease's Dep. at 12–14). Pease met with Thompson and three other senior officials on several occasions to discuss what positions should be deleted. (*Id.* at 14; Eaves Decl. at 2.) In his deposition, Pease explained that he relied on the advice of these officers to determine "that the position at the time, that position was vacant … I was still fairly new trying to get my feet on the ground about the whole encompassing loss prevention program of which MVS and workman's comp are just a small part." (Pease Dep. at 12). In a sworn affidavit, Charles

Ivan Needo, an AAFES employee, stated that based on his twenty four years experience with Loss Prevention in AAFES, the Colonels normally base their decisions on the information provided to them by the Loss Prevention senior officers such as Thompson. (Pl.'s Rule 56 Recitation of Disputed Factual Issues, Needo Aff. at 2).

In addition, as discussed below, there is evidence demonstrating that the Defendant's proferred rationale for the deletion of McDonald's position was pretext for retaliation. Col. Pease asserts at every turn that his decision to eliminate McDonald's position was based on his understanding that the position had been vacant for the past year. (Pease Decl. 2–3; Pease Dep. 7–14). Pease concedes that this understanding was based on the representations of the senior Loss Prevention officers, including Thompson. But McDonald has presented evidence demonstrating that McDonald's position was not vacant. (*See* Pl.'s Rule 56 Recitation of Disputed Factual Issues, Tony McRae Aff. at 1–2; Ada Zayas Aff. at 1–2). An independent inquiry by Pease would have revealed that, contrary to the representations of his advisors, McDonald's position was not vacant. Viewing the evidence in the light most favorable to McDonald, Pease's reliance on false information that came from a group of four advisors, one of whom had alleged discriminatory animus toward the plaintiff, further solidifies the causal chain. *See Long*, 88 F.3d at 307 (causal link between plaintiff's protected activities and termination by unknowing decisionmaker remained intact for summary judgment purposes because evidence demonstrated that termination was based on recommendations by supervisors with discriminatory

knowledge of plaintiff's protected activity sufficient to withstand summary judgment); *Kientzy v. McDonnell Douglas Corp.,* 990 F.2d 1051, 1060 (8th Cir.1993) ("A reasonable jury could have found that [the employee] used [the decisionmakers] as the conduit of his prejudice—'his cat's paw.' ").

animus rather than decisionmaker's independent investigation).[5]

Thompson's discriminatory animus against McDonald for her EEO activity, Col. Pease's reliance on Thompson to determine what positions to eliminate, and evidence that an independent inquiry by Col. Pease would have revealed that the basis for eliminating McDonald's position was false, all present the links that a reasonable jury could rely on to establish a causal chain between McDonald's protected activity and her demotion based on that activity. In sum, whether Col. Pease's decision to eliminate McDonald's position was based on his own analysis or was tainted by Thompson's alleged prejudice against McDonald is a question of fact for the jury. *Azzaro v. Cty. of Allegheny,* 110 F.3d 968, 973–74 (3rd Cir.1997) (en banc) (rejecting summary judgment where circumstantial evidence indicated that officials agreed to "get" plaintiff by covertly securing approval from unsuspecting Board to discharge plaintiff). Accordingly, summary judgment in favor of the Defendant is inappropriate.

### B. Pretext

■ Once the Plaintiff establishes a prima face claim, the burden shifts to the employer to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions. *See Beall,* 130 F.3d at 619–620. If the employer produces sufficient evidence to support a non-retaliatory explanation for its decision, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the employer was not its true reason, but was a pretext for retaliation. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff should be afforded an opportunity to show that the employer's proffered explanation is a pretext, and that discrimination was the real reason for the challenged conduct. *See id.; Beall,* 130 F.3d at 620 (holding that the plaintiff must produce sufficient evidence for a reasonable trier of fact to conclude that the decision to eliminate was retaliatory). Rumsfeld claims that he is entitled to summary judgment on McDonald's retaliation claim because McDonald cannot show, nor can she create a material issue of fact showing, that Col. Pease's proffered legitimate non-retaliatory reason was a pretext for discrimination.

McDonald's opposition and the affidavits attached to her Rule 56 Recitation of Disputed Factual Issues create a material issue of fact as to whether Col. Pease's proffered legitimate non-retaliatory reason for demoting McDonald was a pretext for retaliation. Col. Pease states that he eliminated McDonald's position because it was vacant and thus was an appropriate candidate for deletion in the face of budget cuts. McDonald asserts that Col. Pease's reason was a pretext for retaliation because McDonald's position was filled while she was on leave. McDonald submits the affidavits of Tony McRea and Eida Zayas who state that the position was temporarily filled

---

**5.** There is also an issue of fact concerning the timing of the decision to eliminate McDonald's position. Pease asserts that he made the decision to delete the position in November 1998. (Pease Decl. at 2). However, there is evidence suggesting that the decision to delete McDonald's position did not occur until after she returned to work in December 1998. The actual submission date of the deletion of her position was January 11, 1999, and the approval of the deletion occurred on February 12, 1999. (Wells Dep. at 25). Drawing the inferences in McDonald's favor, the proximity in time from her return to work in December 1998, and the official decision to delete her position in January 1999, creates an additional ground for finding a causal connection.

during McDonald's absence. McRea was a Supervisory Mobile Video Surveillance Specialist. McDonald assisted McRea and worked as her partner in surveillance operations. (McRea Aff. at 1.) McRea states that during the time McDonald was on leave that Zayas assisted McRea by performing the duties of McDonald.

In addition, McRea states that in December 2000, AAFES created a new position entitled a "Mobile Video Surveillance Specialist (Regional Assistant)." The duties and geographic scope of the position were identical to the position held by McDonald. (*Id.*) McRea did not believe this position was advertised. McDonald also asserts that she did not see the posting for the new position. Usually a sign is posted in the Human Resources Office advertising a new position. (McDonald Aff. June 8, 2001, Ex. 7, AAFES Recruitment Policy). In March 2001, AAFES hired Ollie Anthony to fill the new position.

Zayas' affidavit supports McRea's contentions that McDonald's position was not vacant during the period of time when McDonald was on leave. (Zayas Aff. at 1.) Particularly, Zayas states that she temporarily filled McDonald's position, and that she was told that the position was for Chris Finke. (*Id.; see also* Def.'s Mem. in Supp. of Mot. for Summ. J., Sept. 14, 2001, Ex. 1, Declaration of Charles Wells at 3 ("on June 13, 1998, Ms. Zayas was temporarily promoted ... to the position of Band 4–1 Mobile Video Surveillance Specialist at Fort Belvoir, Virginia.")).

Whether McDonald's position was in fact vacant goes directly to the issue of whether Col. Pease eliminated McDonald's position because it was not critical to the needs of AAFES. The assertions contained within the McRea and Zayas affidavits present material issues of fact of whether Defendant's adverse action against McDonald was retaliation and whether Rumsfeld's proffered reason for terminating McDonald was a pretext for retaliation.[6] Therefore, Defendant's motion for summary judgment on McDonald's retaliation claim is inappropriate.

### IV. Conclusion

For the foregoing reasons, the Court holds that material issues of fact exist as to whether Colonel Pease's decision to demote McDonald was tainted by Thompson's discriminatory animus and whether the asserted reason for demoting McDonald was a pretext for retaliation. Accordingly, it is hereby

ORDERED that the Defendant's motions for summary judgment on the Plaintiff's Title VII retaliation claim (Count III) are DENIED.

---

**6.** In addition there appears to be a factual dispute over whether McDonald was properly "RIFed." A reduction in force or RIF score is based on the performance of the individual over a past three year average. (Wells Dep. at 14). Points values are assessed on the individual's training, length of service, promotional potential, etc. *Id.* Usually, when there is a reduction in force, employees with lower scores on the RIF list are the first to face possible demotion or termination. There is evidence indicating that there were three employees below McDonald on the RIF list. (*Id.* at 17; Pl.'s Rule 56 Recitation of Disputed Factual Issues at 5). Pease's decision to demote McDonald notwithstanding that three employees ranked below her on the RIF list, lends further support of McDonald's pretext argument.