**Lisa K. RUSSELL, Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Appellee.**

**No. 00–5172.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 2001.

Decided July 27, 2001.

Mark G. Chalpin argued the cause and filed the briefs for appellant.

David J. Ball, Jr., Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: GINSBURG, Chief Judge, WILLIAMS and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

■ The principal issue in this appeal is whether Lisa K. Russell presented a prima facie case of reverse discrimination by alleging an adverse employment action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Russell alleged that the Department of Veterans Affairs engaged in reverse discrimination in violation of Title VII by awarding her a lower performance rating and a smaller cash bonus than her similarly-situated coworker. In *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999), the court rejected the argument that "poor performance evaluations are necessarily adverse actions." Relying on *Brown,* the district court granted the Department's motion for summary judgment on the ground that Russell had not shown that she suffered an adverse employment action. We hold that the loss of a bonus can constitute an adverse employment action under Title VII and, therefore, reverse the grant of summary judgment. As to Russell's challenges to certain orders as abuses of discretion, we affirm in part and remand in part. We deny Russell's belated request to plead a new cause of action for bad faith litigation abuse.

## I.

Lisa K. Russell, a GS 13 procurement analyst, sued the Department of Veterans Affairs for reverse discrimination after her work performance for the period 1992–93 was rated "excellent" and she received a bonus of $807, while Sherry Patton, her coworker, was rated "outstanding" and received a bonus of $1,355. Russell is Caucasian; Patton is African American. "Outstanding" was the highest of five possible ratings; "excellent" was the second highest rating. The size of the bonus was tied to the rating. Russell alleged that her work performance and qualifications were superior to those of Patton, and that her supervisors had engaged in a pattern of preferential treatment of Patton based on her race. Russell further alleged that her "excellent" rating was adverse because it damaged her chances for promotion and provided her with less protection "against being laid off during a government 'reduction in force,' or RIF, pursuant to a formula outlined by the Office of Personnel Management." The parties filed cross motions for summary judgment, and the district court granted summary judgment for the Department on the ground that Russell had not made out a prima facie case of disparate treatment discrimination under Title VII, as stated in *Brown.* The district court ruled that neither Russell's performance rating nor her bonus, even if lower than she allegedly deserved, could be considered adverse actions. As to her promotion claim, the district court noted that Russell had not offered any evidence that she was denied a promotion opportunity or that the performance rating would have affected her current grade and step position. The district court also rejected Russell's RIF argument as moot as of the time of its ruling on summary judgment, because only Russell's last three performance evaluations could affect how she would fare during a RIF.

## II.

■ Applying the familiar test of *McDonnell Douglas v. Green,* 411 U.S.

792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the court in *Brown* stated that to establish a prima facie case for disparate treatment discrimination "[i]n federal as in private employment cases ... the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown,* 199 F.3d at 452; *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who alleges reverse discrimination must, in addition, demonstrate "additional 'background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir.1993) (quoting *Parker v. Baltimore & Ohio R.R.,* 652 F.2d 1012, 1017 (D.C.Cir.1981)). In *Brown,* the court observed that a "thick body of precedent ... refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions." *Brown,* 199 F.3d at 458. The court held that a "'fully satisfactory' performance rating [was not] an adverse employment action ... [because although it] may have been lower than normal, it was not adverse in an absolute sense." *Id.* Russell contends that the district court erred in granting summary judgment to the Department both because *Brown* did not hold that performance evaluations can never constitute adverse actions and because her case is distinguishable as she consequently received a lower bonus than her similarly situated coworker and was subjected to a greater risk of being RIFed than her coworker. The Department responds that Russell's "'excellent' rating cannot be characterized as adverse because her rating was favorable, not negative or even neutral as in *Brown.*" Our review of the grant of summary judgment is de novo. *See id.*

The Supreme Court has described the concept of a "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Thus, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit.'" *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996) (quoting *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996)). We take no issue with the "objectively tangible harm" requirement, which guards against both "judicial micromanagement of business practices," *Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1556 (D.C.Cir.1997), and frivolous suits over insignificant slights. Performance evaluations are likely to be "[i]nterlocutory or mediate decisions having no immediate effect upon employment." *Id.* at 1555. The result of an evaluation is often speculative, making it difficult to remedy. For example, a single poor evaluation may drastically limit an employee's chances for advancement, or it may be outweighed by later evaluations and be of no real consequence. This reasoning is reflected in *Brown* where the court suggested that performance evaluations should not be considered adverse actions if they did not "affect[ ] the [employee's] grade or salary," and analogized performance evaluations to lateral transfers, which are not actionable injuries unless they "affect[ ] the terms, conditions, or privileges of [an employee's] employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has

suffered objectively tangible harm." *Brown,* 199 F.3d at 457. In contrast, a bonus is a tangible, quantifiable award, more analogous to one's salary or to a benefit of one's employment than to a performance evaluation. It has a more direct, measurable, and immediate effect. Furthermore, the loss of a bonus that is worth hundreds of dollars is not a petty detriment.

The Department nonetheless suggests that *Brown* controls because Russell's "excellent" rating and $807 bonus, although both lower than Russell believed she deserved, were "not adverse in an absolute sense." *Id.* at 458. Because we do not equate performance evaluations and monetary bonuses, the Department's reasoning fails. Furthermore, the logic of an action that is "adverse in an absolute sense" fits poorly with employment decisions involving bonuses. The denial of a bonus, or the award of a lesser bonus for discriminatory reasons, could never be considered "adverse in an absolute sense." A performance evaluation can drop below an average, but a bonus cannot be negative. The perverse logical conclusion of the Department's reasoning is that an employer could award $500 bonuses to all white employees and $1 bonuses to all similarly situated black employees without running afoul of *Brown,* because under such a discriminatory scheme no employee would be worse off in an absolute sense. We decline to extend *Brown* in this manner. Rather, we view *Brown*'s language about absolute deprivations as simply stating that in most circumstances performance evaluations alone at the satisfactory level or above should not be considered adverse employment actions.

The Department also urges us to rely on *Rabinovitz v. Pena,* 89 F.3d 482 (7th Cir. 1996), a case cited with approval in *Brown.* In *Rabinovitz,* the plaintiff claimed that he was given a "fully successful" rather than an "exceptional" performance appraisal, which "prevented him from receiving a $600 bonus." *Id.* at 488. The Seventh Circuit held that "the loss of a bonus is not an adverse employment action in a case such as this where the employee is not automatically entitled to the bonus." *Id.* at 488–89. The Department maintains in its brief that Russell "actually received more favorable treatment" than Rabinovitz because "she received a higher 'excellent' rating" and an award that was "only $548 less than that received by her co-worker with the highest possible rating."

In *Brown,* the court had no occasion to address whether a performance rating accompanied by a bonus differential was actionable. *Brown* can properly be understood, therefore, as citing *Rabinovitz* only to "refute[ ] the notion that formal criticism or poor performance evaluations are necessarily adverse actions." *Brown,* 199 F.3d at 458. As for the precise holding of *Rabinovitz,* the phrase "not automatically entitled to the bonus" is not entirely clear but appears to mean that the amount of the bonus Rabinovitz could have received was entirely discretionary. By contrast, the Department conceded at oral argument that the size of Russell's bonus was directly tied to her performance rating; a higher rating would have automatically meant a larger bonus. Regardless of the factual differences between the two cases, however, we reject the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII.

■ For these reasons, we hold that summary judgment was inappropriate because Russell presented a prima facie case of reverse discrimination under Title VII based on an adverse employment action. To the extent, however, that Russell relies on her temporary exposure to a higher risk of RIF, we hold that such an unrealized risk of a future adverse action, even if

formalized, is too ephemeral to constitute an adverse employment action; as the district court noted, "while the disputed rating might have affected [Russell's] chances of being '[RIF]ed' at an earlier date, it cannot affect her chances now."

### III.

Russell also challenges a series of orders by the district court for which our review is for abuse of discretion. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C.Cir.1995) (sanctions); *Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1559 (D.C.Cir.1991) (discovery). We find either no abuse of discretion or no need to make such a finding inasmuch as the discovery issues will need to be addressed on remand, in light of our reversal of the grant of summary judgment. Much of Russell's brief and the record she supplied on appeal address her claims that the Department mishandled and destroyed evidence that would show that her coworker was not entitled to the outstanding performance rating and larger bonus, and that she was entitled to attorneys fees. We are unable to determine on the basis of this record whether some of the district court's rulings denying Russell's motion for sanctions and certain discovery requests were influenced by its interpretation of *Brown*. Furthermore, some of the district court's rulings appear to rely on its earlier dismissal of Russell's *Bivens* claims; the relevance of that dismissal is unexplained.

■ Insofar as Russell contends that the district court erred in not awarding costs and attorneys fees after directing the Department not to destroy records, she has misconstrued the district court's ruling. The district court's statements provide no basis to conclude that the district court made the necessary predicate finding of bad faith. The district court judge stated: "Although I don't think it is necessary, I will direct the Government not to destroy any documents that are relevant to this case." Russell's counsel indicated that he was satisfied with this ruling. On appeal, Ms. Russell interprets the judge's remark as a sanction against the Department under the district court's inherent powers. Hardly. By saying "I don't think it is necessary," the judge was indicating that he found little or no merit to the motion and that he did not believe that the Department was destroying evidence. The district court did not find that the Department had acted in bad faith in destroying records, and absent such a finding, there was no basis for the award of monetary sanctions. *See Shepherd*, 62 F.3d at 1475; *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C.Cir.1992). Thus, Russell provides no ground on which the court could conclude that the district court abused its discretion in denying costs and attorneys fees.

■ Russell's contention that the district court abused its discretion in denying her motion for sanctions for bad faith litigation abuses without an evidentiary hearing fares no better. She presents no basis for concluding that the district court abused its discretion in proceedings without such a hearing. *See LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 904 (D.C.Cir.1998). Indeed, she argued in the district court that no hearing was needed because the evidence was clear. To the extent that Russell also contends that the district court erred in failing to impose sanctions, we remand this issue. The district court gave no reasons in its order denying the motion for sanctions, and thus this court cannot determine how the district court resolved the parties' disputed claims of material fact. *See Lyles v. United States*, 759 F.2d 941, 942 (D.C.Cir.1985).

Regarding discovery, the district court will need to reassess, in light of our reversal of the grant of summary judgment, the

relevance of Russell's motion to compel discovery responses to five interrogatories, which pertained to the handling of a letter that she sent concerning the safeguarding of records, the disposition of telephone records, alleged document destruction by Department attorneys, Department action to preserve telephone records, and Department policies and procedures to preserve records. To the extent relevant to Russell's claim of disparate treatment, the discovery requests may be meritorious. To the extent they relate to her motion for sanctions for litigation abuse that the district court properly denies, there may be no basis for granting the requests. We leave these matters to the district court on remand, to proceed as is appropriate, recognizing that the district court may ultimately conclude that its prior discovery rulings should stand.

Finally, Russell's effort to pursue an independent cause of action for bad faith litigation abuse against the Department fails. As Russell acknowledges, to date no circuit court has held that a federal cause of action exists. Because she did not raise this issue in the district court and does not show on appeal that "a manifest injustice might otherwise result," *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C.Cir.1992), we decline to decide now whether such a federal cause of action exists.

Accordingly, we reverse the grant of summary judgment for failure to present a prima facie case under Title VII, and remand the case for further proceedings; we deny the request to plead a new cause of action.