TATEL, Circuit Judge,
dissenting:
Imagine that discovery in this case had turned up a memo from Frederick Douglas’s former supervisor, John Weicher, expressly stating that he would never nominate a black person for the Presidential Rank Award. Under this court’s holding — that disqualification from competing for a lucrative employment award is not an adverse employment action — Douglas would have no recourse to Title VII even in the face of such direct evidence of discriminatory intent. Because this result cannot be squared with Title VII, and because there is no principled difference between the hypothetical case and Douglas’s with respect to the only issue we address today — whether Weicher’s rejection of Douglas qualifies as an adverse employment action — I respectfully dissent.
It is true that “ ‘not everything that makes an employee unhappy’ ” is actionable under Title VII. Maj. Op. at 552 (quoting Russell v. Principi, 257 F.3d 815, 818 (D.C.Cir.2001)). Indeed, even given an openly discriminatory memo, Douglas would be unable to sustain a Title VII discrimination claim for a “[p]urely subjective injur[y], such as dissatisfaction with a reassignment, or public humiliation or loss of reputation,” Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C.Cir.2002) (citation omitted), or for a negative performance evaluation unconnected to a financial or other benefit, Maj. Op. at 552. But Weicher’s rejection of Douglas as a contender for the Presidential Rank Award was far more tangible than any of these merely ego-bruising actions — it definitively closed Douglas’s only available door to an award equal to 35 percent of his salary. Thus when Douglas lost the opportunity to compete for this valuable employment-related award, he experienced “materially adverse consequences affecting the terms, conditions, or privileges of employment ... such that a reasonable trier of fact could find objectively tangible harm,” Forkkio, 306 F.3d at 1131.
*557 To be sure, we have recognized that some harms, such as those threatened by negative performance evaluations standing alone, may be too speculative to constitute adverse employment actions. See Maj. Op. at 552 (citing Russell, 257 F.3d at 818). The reasoning underlying that principle, though entirely correct where applicable, has nothing to do with this ease. As we explained in Russell v. Principi: “The result of an evaluation is often speculative, making it difficult to remedy. For example, a single poor evaluation may drastically limit an employee’s chances for advancement, or it may be outweighed by later evaluations and be of no real consequence.” 257 F.3d at 818. In this case, by contrast, we needn’t speculate at all as to the negative consequences of Weicher’s rejection of Douglas’s candidacy. It represented the final word, irremediably foreclosing Douglas from competing for the award. See Appellee’s Br. 18 (conceding that the “non-nomination ... took [Douglas] out of the running” for the award). Unlike a “single poor evaluation,” which merely adds to the overall mix of information in an employee’s personnel file, Russell, 257 F.3d at 818, Weicher’s rejection had the direct and immediate effect of terminating Douglas’s chances for a substantial monetary award. No future action could mitigate this adverse impact and render the rejection “of no real consequence,” id.
The proper analogy is thus not to a negative performance evaluation, but rather to excluding a candidate from the selection process for a promotion or a job opening, either of which would qualify as an adverse employment action. Like hiring and promotions, the Presidential Rank Award involves a formalized, multi-layered selection process for a specific, tangible employment benefit — a significant sum of money. This case is thus much like Cones v. Shalala, 199 F.3d 512, 521 (D.C.Cir.2000), where we held that refusing to allow an employee to compete for a job opening qualified as an adverse employment action without regard to how likely it was that the employee would actually be hired. We neither asked how many other individuals would have applied for the job nor required the employee to show that he would automatically have been the successful candidate. We simply reasoned that “refusing to allow [an employee] to compete” for a benefit is “tantamount to refusing” to grant the benefit. Id. So too here. .Refusing to allow Douglas to compete for the Presidential Rank Award was “tantamount to refusing” the award.
Seeking to avoid the obvious implications of Cones for this case, the court attempts to distinguish the Presidential Rank Award selection process from selection processes for hiring and promotions. Relying on oft-quoted language in Burlington Industries, Inc. v. Ellerth—“a tangible employment action [for purposes of vicarious liability] constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,” 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) — the court says there is a difference between actions “related to one’s work responsibilities and position” like hiring, firing, failing to promote, and reassignment, and “decisions causing [a] significant change in benefits.” Maj. Op. at 552-53. According to the court, actions in the first category— hiring, firing, failing to promote, and reassignment — ’“are conclusively presumed to be adverse employment actions, even if any alleged harm is speculative,” id. at 553, as are decisions relating to such actions, like the refusal to allow an employee to compete for a promotion in Cones, Maj. Op. at 556. For the second category, however, the court offers up a newly-minted strict “causation requirement” applicable *558 only to employment benefits: “a decision causing [a] significant change in benefits ... alone requires an employee to explain how the employer’s action harmed his employment status,” id. at 553. Under this new rule, for decisions such as refusal to hire or promote that cause an employee to lose out on a better job, rejected candidates need show only that they were eliminated at some point in the process. By contrast, for decisions that cause an employee to lose out on an employment benefit, rejected candidates apparently must now prove that they would have ultimately received the benefit had they not been eliminated at an earlier stage of competition. Because receiving the Presidential Rank Award represents a change in benefits rather than a change in work responsibilities or position, id. at 553-54, the court concludes that denial of the opportunity to compete for the award doesn’t qualify as an adverse employment action unless the employee can show that he would have otherwise received the award, id. at 555-56.
The distinction the court draws fails to hold up. The court nowhere explains why actions related to “one’s work responsibilities and position,” id. at 552, fall more squarely under Title VII’s ban on discrimination in “compensation, terms, conditions or privileges of employment,” 42 U.S.C. § 2000e-2(a)(l), than do actions related to, for example, work hours, vacation time, bonuses, or any other employment benefit. See George v. Leavitt, 407 F.3d 405, 410-11 (D.C.Cir.2005) (explaining that the Title VII provision governing federal employers, 42 U.S.C. § 2000e-16(a), is construed in terms of the provision governing private employers, 42 U.S.C. § 2000e-2(a)). Nor is it clear whether the court means to include all employment benefits in its disfavored category now subject to the causation requirement. The court seems to place pay and bonuses in the benefits category. Maj. Op. at 553. But why? Surely pay directly “relate[s] to one’s ... position,” so why wouldn’t pay decisions, just like promotion decisions, categorically qualify as adverse employment actions without regard to how speculative the ultimate harm? For that matter, why doesn’t the Presidential Rank Award also “relate to one’s work responsibilities and position”? After all, the award is based on an employee’s achievements in carrying out his work responsibilities and is calculated as a percentage of the salary for his position.
In any event, regardless of where the court draws the line, Burlington Industries provides no support for treating benefits differently from position and work responsibilities. Every item on Burlington Industries’ non-exhaustive list refers to the end result sought: a new job, retention of one’s job, a promotion, or a decision causing a significant change in benefits— here the President’s decision to award a substantial sum of money. If definitively barring a candidate from consideration for one of these desired outcomes constitutes an adverse employment action — as the court acknowledges with respect to promotions — then barring a candidate from consideration for any of them does.
Not only does the court’s distinction find no support in Burlington Industries, but it makes no sense. For example, suppose an employer asks line supervisors to nominate candidates for one available high-level vacancy and separately for one available bonus. Now suppose a line supervisor refuses to nominate a minority employee for either the promotion or the bonus, and two white employees are ultimately chosen. Under the court’s “causation requirement” the minority employee has suffered an adverse employment action as to the promotion but not as to the bonus. The minority employee would now have a Title *559 VII claim related to the bonus only if she could show that had the line supervisor not excluded her she would have received the bonus over any of the other nominees. Nothing in Title VII or in our Title VII cases even hints that the statute provides less protection for employees adversely affected by decisions involving money than for those adversely affected by decisions involving promotions.
The court does acknowledge that because bonuses and pay have “a ‘direct, measurable and immediate effect’ ” on compensation, the loss of a bonus qualifies as an adverse action. Maj. Op. at 553. Yet the court fails to explain what it means by “loss of a bonus.” Does “loss of a bonus” refer solely to the final decision such that a bonus is actionable only if an employee can show that she in fact lost the bonus, i.e. that she would have received it but for the employer’s action? If so, then it leads to the arbitrary result in the hypothetical above. Or does “loss of a bonus” include loss of the opportunity to compete for a bonus such that an employee eliminated from competition has suffered an adverse employment action regardless of how likely it was that she would actually receive the bonus? If so, the court’s reasoning defeats its conclusion in this very case — surely an employee who obtains an award worth 35 percent of his salary in recognition of his work accomplishments has experienced as direct, measurable, and immediate an effect on his compensation as does an employee who receives a less substantial bonus. “By parity of reasoning,” id., loss of the award through elimination from competition “likewise has such an effect,” id.
Perhaps the court means to limit its causation requirement to employer actions, like the single performance evaluation, that on their face have no obvious connection to any particular selection process. But even for such actions, I see no basis for distinguishing between hiring, firing, failing to promote, and reassignment on the one hand, and other employment benefits on the other. Nothing in our negative performance evaluation cases indicates that the analysis of an evaluation’s impact differs when the employee is worried about her ability to get a future promotion rather than a future bonus or raise. Surely the court does not mean to suggest that the recipient of a negative performance evaluation need no longer show that the evaluation in fact played a role in taking her out of the running for a job or promotion.
Not only is there no basis for requiring a different showing for employment benefits than for promotions, but the court’s causation analysis gets it backwards. We know from Cones that the question isn’t whether absent the employer’s action the plaintiff would have gotten the benefit, but rather whether as a result of the employer’s action the plaintiff could not. Cf. Burke v. Gould, 286 F.3d 513, 522 (D.C.Cir.2002) (negative performance evaluation constitutes adverse employment action when plaintiff received bonuses “nearly every year previously” (emphasis added)). Performance evaluations generally do not conclusively terminate an employment benefit selection process; Weicher’s elimination of Douglas from the Presidential Rank Award process did.
Nor is it clear what level of certainty the court expects plaintiffs like Douglas to establish. After all, Douglas’s hope for the Presidential Rank Award was hardly a pipe dream: in the year Weicher rejected him, two-thirds of those nominated received awards, Appellant’s Reply Br. 3-4. What greater showing is now required at the summary judgment stage to permit a reasonable jury to infer that Douglas would have received the award?
*560 In support of its conclusion that Douglas failed to meet its flawed causation requirement, the court focuses on the highly selective nature of the Presidential Rank Award, stating that “[ujnlike being considered for a promotion, ... being recommended for ... the extraordinary distinction of a Presidential Rank Award is not an ordinary expectation of employment.” Maj. Op. at 554. Yet much like promotion opportunities, the Presidential Rank Award is offered annually, and all career Senior Executive Service members with three or more years of service are eligible to compete. Appellee’s Br. 2-3 (citing 5 C.F.R. § 451.301(b)). For eligible Senior Executive Service members, then, competing for a Presidential Rank Award is indeed an ordinary expectation of employment-or as the statute puts it, a “privilege[ ] of employment,” 42 U.S.C. § 2000e-2(a)(l). Nor is it relevant that the Presidential Rank Award represents a “lofty” award, Maj. Op. at 554. If prestige determined the scope of Title VII, employers could refuse to hire or promote minorities into the most desirable elite positions, yet Title VII clearly covers such positions, see, e.g., Stewart v. Ashcroft, 352 F.3d 422, 426-27 (D.C.Cir.2003) (recognizing that non-selection as chief of section in the Department of Justice constitutes an adverse employment action).
Further seeking to distinguish the Presidential Rank Award from other employment decisions that involve similar selection processes, the court emphasizes that the President, as the ultimate decision-maker, enjoys unfettered discretion and is immune from suit, Maj. Op. at 554-55. But Douglas is not suing the President for denying the award; he’s suing his employer, the Secretary of Housing and Urban Development, for terminating his candidacy for an award calculated as a percentage of his HUD salary and paid for with HUD funds, Appellant’s Opening Br. at 2. True, Weicher lacked ultimate authority to grant the award, but he did have authority to ensure that Douglas was excluded — a power he exercised to Douglas’s irreparable detriment.
Finally, the court says that promotion decisions are “subject — in the most part— to objective criteria” while the Presidential Rank Award is based on subjective criteria. Maj. Op. at 554. Yet we have long recognized that promotion and hiring decisions often turn on subjective criteria, see Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1298 (D.C.Cir.1998) (en banc) (“[Ejmploy-ers may of course take subjective considerations into account in their employment decisions .... ”), and such decisions nonetheless remain subject to Title VII. Moreover, it is far from clear that the Presidential Rank Award process is in fact divorced from objective criteria. For example, “an exceptional record of achieving important program results,” Saul Ramirez Decl. Attach. B at 7, would likely involve objective accomplishments such as Douglas’s claim that he increased single family home ownership, Appellant’s Opening Br. at 11. But even were the award criteria entirely subjective, relying on such criteria to pick award recipients is no different from relying on subjective criteria to choose between two job candidates with indistinguishable objective qualifications, cf. Aka, 156 F.3d at 1298 (hiring decision based on the purely subjective criteria of “enthusiasm” when objective criteria did not clearly favor selected candidate), or from hiring decisions for jobs such as speechwriter or graphic designer that by their nature are highly subjective.
By focusing on the subjectivity of the award, the court exposes the fundamental flaw in its decision: it conflates the question of whether Weicher’s disqualification of Douglas was sufficiently adverse with the ultimate question of whether it was motivated by discriminatory animus. That *561 the Presidential Rank Award recognizes subjective “star qualities,” Maj. Op. at 553, may make it more difficult for Douglas to show that Weicher rejected him because of race, but it has nothing to do with whether Weicher’s decision is the type of employment action Title VII seeks to rid of discrimination.