**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 10-3268
—————————

EVA SALA,

Appellant.

v.

LABRON HAWK; ATTORNEY GENERAL OF THE UNITED STATES

—————————————————

On Appeal from the District Court of the Virgin Islands
(Division of St. Croix)
District Court No. 1-08-cv-00063
District Judge:  Honorable George W. Cannon

—————————————————

Argued on December 5, 2011

Before:  FISHER, GREENAWAY, JR. and ROTH, <u>Circuit Judges</u>

(Opinion filed: May 1, 2012)

Andrew C. Simpson, Esquire  **(Argued)**
Andrew C. Simpson Law Offices
2191 Church Street, Suite 5
Christiansted, St. Croix, VI   00820

Counsel for Appellant

Timothy J. Abraham, Esquire  **(Argued)**
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
Charlotte Amalie, St. Thomas, VI   00802-6924

Counsel for Appellee

—————————

O P I N I O N

**ROTH**, Circuit Judge:

Eva Sala appeals the District Court's entry of summary judgment in favor of the government. For the reasons that follow, we will affirm in part and vacate in part the judgment of the District Court and remand this matter for further proceedings.

## I. **Background**

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Sala is a female Special Agent of the Drug Enforcement Administration. She has been employed with the DEA since 1994. In September 2004, she requested assignment to the DEA's office in St. Croix, U.S. Virgin Islands, and was presented with the option of signing a three, four, or five year service agreement. Because DEA positions in the Virgin Islands are considered hard to fill, the DEA has paid agents transferring there incentive payments based upon the length of the service agreement. As further encouragement to extend the original assignment, the DEA has also offered agents, who initially signed for a three year tour of duty, 20 days home leave if they agree to remain in St. Croix for a fourth year. Sala signed an agreement for a three year tour until September 14, 2007.

During her tenure in St. Croix, Sala was the only female special agent assigned to the office. In March 2007, Sala requested to extend her tour for an additional year, until

2

September 14, 2008. Despite the fact that Resident Agent in Charge, Labron Eugene Hawk, Sala's male supervisor, had given her generally positive employment evaluations, he advised against the DEA's granting her a one-year extension. Upon receiving Hawk's recommendation, Jerome Harris, Special Agent in Charge for the Caribbean Division, requested that Hawk write a memorandum explaining the basis for it. On March 28, 2007, Hawk submitted a memorandum that cited 25 incidents as his justification for why Harris should not extend Sala's agreement. Approximately a month later, on April 30, 2007, Harris relied on the information contained in Hawk's memorandum and denied Sala's request. After her extension was denied, Sala submitted a list of the top seven locations to which she wanted to transfer. She was assigned to her second choice, Orlando, Florida.

On July 22, 2008, Sala initiated the present litigation. The District Court dismissed one of Sala's claims, and the parties proceeded with discovery on her remaining claims. At the close of discovery, the government moved for summary judgment. The District Court granted the motion and entered judgment against Sala. She has appealed only her discrimination and hostile work environment claims.

## II. Discussion

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting summary judgment, and, in doing so, "must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party's favor." *N.J. Transit Corp. v. Harsco Corp.,* 497 F.3d 323, 326

3

(3d Cir. 2007). Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A. Discrimination

Sala attempted to prove her discrimination claim under a pretext theory. To do this, she must first establish a *prima facie* case by showing that she was a member of a protected class, that she was qualified for the position, that she suffered an adverse employment action, and that the action occurred in such a way as to give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once she established her *prima facie* case, an inference of discriminatory motive arose and the burden shifted to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer articulates such a reason, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.* Here, the District Court concluded that Sala failed to present a *prima facie* case of discrimination because she could not establish an adverse employment action.

An adverse employment action involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In other words, the action by the employer must be "serious and tangible enough to alter an employee's compensation,

4

terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001)). Sala asserts that she suffered an adverse employment action because she lost the benefits of twenty additional days of paid home leave and St. Croix's higher cost of living allowance when her service agreement was not extended for an additional year. In response, the government contends that Sala's transfer to Orlando did not result in any significant change in benefits. The government argues that the reason that Sala never obtained the paid home leave or cost of living allowance was because these benefits are acquired only if an employee's service agreement is converted from three to four years.

We conclude that the District Court erred when it determined that Sala did not suffer an adverse employment action. Sala experienced a significant change in her benefits when she lost twenty days of paid home leave as a result of the DEA's decision not to extend her service agreement. *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1150-51 (10th Cir. 2005) (finding a diminishment in leave an adverse employment action). Although the home leave was conditioned on an extension of her service agreement, it was error for the court to conclude that Sala did not suffer an adverse employment action merely because the DEA possessed discretion on whether to extend the agreement. *See Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001) (holding that an employee's negative employment evaluation which resulted in the denial of a purely discretionary bonus constituted an adverse employment action); *see also Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1993).

5

Under *McDonnell Douglas*, Sala needed to raise only an inference of discrimination to meet her initial burden and establish a *prima facie* case. *See, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). The particular reasons why the DEA declined to extend Sala's agreement were more appropriately raised at the second step of the analysis when the burden shifted to the Government to articulate a legitimate non-discriminatory reason why the service agreement was not extended. *See Ezold*, 983 F.2d at 523. We conclude that Sala has established a *prima facie* case of discrimination due to the loss of the home leave allowance.

We next consider whether the District Court erred when it ruled, in the alternative, that Sala could not prove that the Government's alleged non-discriminatory reasons were merely a pretext for unlawful discrimination. Hawk offered twenty-five reasons why he recommended the denial of Sala's request to extend her assignment. These included (1) her violation of DEA policies involving travel, (2) her failure to deliver a prisoner for grand jury testimony in San Juan, Puerto Rico, (3) her involvement in leaving a prisoner unattended in the DEA office's holding cell, (4) her failure to properly maintain case files, (5) her increasing friction within the office and with other agencies, and (6) the numerous complaints he received from other special agents about her conduct.[1] Sala does not dispute the factual basis for Hawk's contentions; therefore, the burden shifts to her to prove pretext. *See Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006).

---

[1] Although Hawk did not make the final determination on whether Sala's extension should be granted, his opposition was the primary reason Harris denied her request. Therefore, we find that Hawk's memorandum was the proximate cause and motivating factor for Sala's adverse employment action. *See Staub v. Proctor Hosp.*, ___ U.S. ___, 131 S. Ct. 1186, 1191-92 (2011).

To prove pretext and rebut an employer's legitimate non-discriminatory reasons for an adverse employment action, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  This requires the employee to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (internal quotations omitted); *see Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) ("We have applied the principles explained in *Fuentes* to require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision").  The evidence the employee provides need not "include evidence of discrimination [because], . . . in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Kautz*, 412 F.3d at 467 (quoting in part *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000)) (internal quotations omitted).

Sala asserts that Hawk's proffered non-discriminatory reasons are pretexual because she consistently received positive employment evaluations from him.  As Sala points out, stark and glaring contradictions exist between her annual reviews and the memorandum Hawk submitted in support of his recommendation not to extend her

7

service agreement.  For example, Hawk asserted in the memorandum that "Sala . . . has fallen short of what DEA should expect of someone with her time on the job."  However, in her employment evaluation that occurred approximately a year earlier, Sala was described as an "asset" to the office that possessed "a wide range of experience with DEA and will likely be a future leader in this organization."  In another portion of the memorandum Hawk claimed Sala "caused problems within the St. Croix" Office and between the DEA and Task Force Officers of the Virgin Islands Police Department.  Her employment evaluations did not support this assessment.  Rather, Sala was described as "a team player," and "a tremendous asset," who "formed strong bonds with several members" of the office and has even served as a "mentor" to an officer from the Virgin Islands Police Department.

Perhaps the best example of the inconsistencies between Sala's employment evaluations and Hawk's memorandum was his characterization of her work on "a very old and complex investigation know as 'The Commission Investigation.'"  According to her evaluation:

> This high-profile and in-depth case has left many lesser agents by the wayside.  SA Sala was asked to accept this case because of her can-do attitude and she has done an outstanding job of moving the case forward. SA Sala has also made great strides in the case by bringing witnesses forward that had refused to cooperate with other agents in the past.  Some of these witnesses would not cooperate with local officers but did cooperate with SA Sala . . ..  This is rare on the island of St. Croix and is a credit to SA Sala's abilities.

8

In his memorandum, however, Hawk downplayed the significance of Sala's efforts on the case and criticized her work ethic and relationships with the local Virgin Island Police officers.

When viewed in their totality, Sala's positive annual employment evaluations raise serious questions of material fact as to whether the reasons articulated by Hawk in his memorandum merely served as a pretext for unlawful discrimination. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994) (finding pretext when the employee presented evidence of "glaring contradictions" between her evaluations and the employer's proffered reason for adverse action); *see also Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 921-22 (8th Cir. 2000) (holding similarly). A jury may conclude that the description of Sala's accomplishments and abilities depicted in the evaluations provide evidence of pretext because they starkly contrast with the reasons proffered in Hawk's memorandum for why her extension should not be granted. *See Green v. New Mexico*, 420 F.3d 1189, 1193 (10th Cir. 2005) (citing *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 564 (10th Cir. 1996)). Therefore, since a jury may conclude that Sala's request to extend her service agreement was denied for discriminatory reasons, we find that the District Court erred in granting summary judgment.[2]

---

[2] We also note that "to avoid summary judgment," an employee need not "cast doubt on each" of the employer's proffered "bagful" of legitimate non-discriminatory reasons. *Fuentes*, 32 F.3d at 764 n.7. Instead, she need only "cast substantial doubt on a fair number of them . . . to discredit the remainder." *Id.* We find that the contradictions between Sala's employment evaluations and the reasons contained in Hawk's memorandum as justification for his recommendation that the DEA not extend her service agreement "may impede [the government's] credibility seriously enough so that a

## B. Hostile Work Environment

To state a claim under Title VII for discrimination resulting from a hostile work environment, Sala must demonstrate that she suffered intentional discrimination because of her sex, that the discrimination was pervasive and regular, that she was detrimentally affected by it, that a reasonable person of the same sex in that position would have been detrimentally affected, and that there is *respondeat superior* liability. *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007). Sala asserts that the District Court erred because it concluded that she did not suffer intentional discrimination on the basis of her sex, that her alleged discrimination was not pervasive or regular, and that she failed to prove the existence of *respondeat superior* liability. Hawk, however, concedes that he was Sala's direct-line supervisor and the existence of *respondeat superior* liability.

For purposes of this analysis, we will assume that any discrimination Sala suffered was because of her sex. Consequently, we will examine whether the alleged discrimination was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In making this determination, we analyze whether the alleged discrimination was objectively detrimental to the victim, *id.*, and focus on the totality of the circumstances, including such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

factfinder may rationally disbelieve [its] remaining proffered reasons," *id.*, without any particular evidence "undermining" those reasons, *id.*

10

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

Sala asserts that the harassment she endured during her tenure consisted of the following actions by Hawk: (1) on one occasion, she received an E-mail from him entitled "You 'The aggressive Woman' will like this" that contained an attached video clip of two male law enforcement officers tasering a female into submission during a vehicle stop, (2) commented about her appearance in "tight jeans with a gun and a badge," (3) denied her access to the office's gun safe despite her qualifications to handle firearms, (4) selected males as the acting agent in charge of the office during periods of his absence, and (5) treated her differently than male agents regarding work related travel.

After careful examination of the record, we find that none of Hawk's actions created a genuine issue of material fact as to whether he pervasively, regularly, or severely discriminated against Sala so as to alter the conditions of her employment and create a hostile environment. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

In particular, Sala's most serious claim, the incident regarding the video clip, only occurred once and is most appropriately viewed as a "sporadic" or "offhand comment" that did not alter the terms and conditions of her employment. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *see also Weston,* 251 F.3d at 428 ("The mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability").

11

Similarly, Hawk's comment about Sala's appearance in "tight jeans with a gun and badge" is also a single isolated comment that did not create an atmosphere of harassment. *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990). Ultimately, Sala failed to present a *prima facie* case of a hostile work environment because she did not offer any evidence that Hawk's alleged discriminatory conduct detracted from her job performance, discouraged her from remaining on the job, kept her from advancing her career, or altered the conditions of her employment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

## III. <u>Conclusion</u>

For the foregoing reasons, we will affirm in part and vacate in part the judgment of the District Court and remand this matter for further proceedings consistent with this opinion.