**Juanita GRIFFIN, Appellant,**

v.

**WASHINGTON CONVENTION CENTER, Appellee.**

**No. 97–7074.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1998.

Decided May 12, 1998.

Richard H. Semsker argued the cause and filed the briefs for appellant. Solaman G. Lippman entered an appearance.

William F. Causey argued the cause for appellees. John M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Carol Elder Bruce and Eric C. Grimm were on the brief.

Before: GINSBURG, SENTELLE, and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

Concurring opinion filed by Circuit Judge SENTELLE.

GINSBURG, Circuit Judge:

When the Washington Convention Center discharged Juanita Griffin from her position as an electrician, Griffin brought suit alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* At trial, the magistrate judge excluded evidence tending to show that Griffin's immediate supervisor was opposed to women working as electricians. The WCC defends that evidentiary ruling on the ground that the supervisor's alleged bias was irrelevant because he lacked authority to fire Griffin; it was his superior, a woman, who made the ultimate decision to fire the plaintiff. The WCC admitted, however, that the plaintiff's supervisor participated at every stage of the process that led to her termination.

We hold that evidence of a subordinate's bias is relevant where, as here, the ultimate decisionmaker is not insulated from the subordinate's influence. The magistrate judge therefore erred in excluding evidence of the supervisor's bias. Accordingly, we reverse the judgment of the district court and remand the case for a new trial.

## I. BACKGROUND

Juanita Griffin went to work for the WCC as an apprentice electrician in 1984. Griffin worked in the "engineering" department doing routine maintenance, such as changing light bulbs. She had little occasion to develop her skills but got favorable performance evaluations. In 1987 she received her journeyman electrician's license. As a result of the reorganization that the WCC carried out that same year, Griffin came under the supervision of Cleo Doyle, a man who regarded Griffin as incompetent. According to Griffin, Doyle repeatedly said that women should not be working as electricians but should stay at home, "barefoot and pregnant."

Doyle recommended to his superior, Director of Operations Reba Evans, that Griffin be fired. After a series of meetings with Doyle, Griffin, and Randolph Scott—Griffin's union representative—Evans decided to have Doyle and Scott develop a training program for Griffin (and two other employees about whom Doyle had complained), after which Doyle would test Griffin's skills. When Griffin had repeatedly failed the test, Doyle again recommended that Griffin be fired. After further consultation with Scott and others, Evans discharged Griffin.

Griffin then filed a complaint with the D.C. Department of Human Rights charging the WCC with sex discrimination. Upon receiving a right-to-sue letter she brought suit under Title VII in district court. Griffin's counsel planned to offer the testimony of Griffin and two (male) coworkers detailing various sexist remarks allegedly made by Doyle. Before the trial began, however, the magistrate judge granted the WCC's motion *in limine* to exclude any reference to Doyle's comments about the proper role of women. When Griffin's lawyer later elicited testimony concerning Doyle's comments, the judge instructed the jury to disregard the testimony. The judge did, however, permit the following exchange during the cross-examination of Evans by Griffin's lawyer:

Q. You don't recall testifying that Ms. Griffin told you she had concerns because she believed Mr. Doyle and Mr. Fleming [another of Griffin's superiors] were sexists?

A. I remember the conversation, yes.

Q. Do you recall what specifically she told you in that regard?

A. No, I don't. Most of the focus that I remember was with regard to her performance.

Q. Do you recall her telling you that Mr. Doyle had made a statement to her that he believed that she should be at home, barefoot and pregnant? Do you recall her telling you that?

A. No, I don't.

The jury returned a verdict for the WCC. Griffin appeals.

## II. ANALYSIS

Griffin claims that the magistrate judge committed reversible error when he excluded as irrelevant testimony about Doyle's sexist remarks. The WCC responds that the judge did not err at all in excluding the testimony because Doyle was not responsible for Griffin's dismissal and Evans, who was responsible, based her decision upon an objective test of Griffin's skills—a test developed and supervised in part by Griffin's union representative. In the alternative, the WCC argues that the exclusion of the disputed testimony was harmless error in light of all the evidence indicating that Griffin was fired for incompetence.

### A. Relevance

The magistrate judge initially regarded Griffin's effort to introduce testimony about Doyle's comments as an attempt to smuggle into the record evidence relevant only to theories of recovery that Griffin had failed to raise in her complaint to the Department of Human Rights. In his order granting the WCC's motion *in limine* the judge explained:

> Evidence of a course of conduct as well as statements designed to show intent to sexually harass relevant to a claim of maintaining a sexually hostile work environment is not relevant to a claim of sexual discrimination in job training.

During Griffin's opening statement, the WCC objected to Griffin's reference to expected testimony on the issue of Doyle's bias. The magistrate judge sustained the objection, apparently because he still regarded the testimony as relevant only to a sexual harassment claim that had not been preserved for trial. Later in the course of the trial the magistrate judge shifted his ground somewhat:

> [T]his witness [Doyle] did not have any authority to hire or fire individuals. He made a recommendation and, on a number of occasions, his recommendation was overruled. So, he was not the one who had the ultimate authority on it.

Griffin has argued from the outset that the excluded testimony is probative of Doyle's motive and intent and relevant to the case because Doyle was responsible for Griffin's training and participated in the decision-making process that led to her discharge. The WCC, on the other hand, argues that Doyle's motive and intent are not relevant because Evans, not Doyle, made the decision to fire Griffin.

The WCC relies upon the reasoning of a recent case in the Seventh Circuit:

> [W]hen the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissive [*sic*] basis, the bias of the subordinate is not relevant.

*Willis v. Marion County Auditor's Office,* 118 F.3d 542, 547 (1997). So much is uncontroversial; even Griffin agrees with the principle. Hence, if it is true, as the WCC argues, that Evans's "decision [to terminate Griffin was] independent of, or insulated from" Doyle, then the evidence of Doyle's bias was properly excluded as irrelevant.

Griffin maintains, however, that "Doyle was in fact an integral part of the decision-making process" that led to her discharge, so that Doyle's discriminatory motive "would have infected any deliberations over whether to terminate Plaintiff's employment." We agree. Unlike the court in *Willis,* we cannot say that "[t]he record affirmatively demonstrates that [the decisionmaker's] estimation of the quality of [plaintiff's] work was not jaded by anyone else's subjective and possibly [sexually] biased evaluation." 118 F.3d at 547.

On the contrary, Doyle was Evans's chief source of information regarding Griffin's job performance, repeatedly urged Evans to terminate Griffin, was then made responsible for training Griffin, helped develop the tests used to assess Griffin, was responsible for evaluating Griffin's success on those tests, and was in contact with Evans at every significant step in the decisionmaking process. Under these circumstances, in which Evans's dependence upon Doyle's opinion was heightened by her inability independently to assess Griffin's technical proficiency, a jury exposed to the excluded evidence of Doyle's sexism might well conclude that Doyle used Evans, in Judge Posner's phrase, "as the conduit of

[his] prejudice—his cat's-paw." *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990).

■ That Randolph Scott, a representative of Griffin's union, and others participated in the decisionmaking process together with Doyle was not sufficient to insulate Evans from Doyle's influence. By his own estimate, Scott personally observed only some five percent of Griffin's training. Like Evans, Scott depended upon Doyle's observations and evaluation for most of his knowledge about Griffin's performance. Evidence of Doyle's intent is therefore relevant in evaluating Griffin's termination, and the magistrate judge erred by excluding it.

■ Thus do we join at least four other circuits in holding that evidence of a subordinate's bias is relevant where the ultimate decision maker is not insulated from the subordinate's influence. *See Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1323 (8th Cir.1994) ("an employer cannot escape responsibility for [ ] discrimination ... when the facts on which the reviewers rely have been filtered by a manager determined to purge the labor force of [a protected class of] workers"); *see also, e.g., Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1214 (3d Cir.1995); *Simpson v. Diversitech General, Inc.*, 945 F.2d 156, 160 (6th Cir. 1991); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990); *cf. Steverson v. Goldstein*, 24 F.3d 666, 670 (5th Cir.1994).

## B. The Opened Door Doctrine

■ The magistrate judge's exclusion of testimony about Doyle's alleged bias is particularly surprising in light of the admission in evidence of Doyle's self-serving statements about his lack of discriminatory intent. When Doyle testified on direct examination that he had recommended to Evans that three employees, including Griffin, be terminated, the following exchange ensued:

Q. Did you make those recommendations because they were women?

A. No.... It has nothing to do with women. It has to do with someone who has an electricians' [*sic*] license who did not know basic fundamentals.

By eliciting that testimony, the WCC "opened the door" to matters excluded by its own motion *in limine*. Testimony impugning Doyle's intent should have been admitted on rebuttal at least for purposes of impeachment and in order to prevent the jury from forming the erroneous impression that the proper characterization of Doyle's intent was undisputed. *See United States v. Baird*, 29 F.3d 647, 654 (D.C.Cir.1994) ("Once the door is opened, the other party can get through it otherwise irrelevant evidence 'to the extent necessary to remove any unfair prejudice which might otherwise have ensued' "). Yet when Griffin's counsel tried to bring the excluded evidence in through the door opened during the defendant's case-in-chief, the magistrate judge denied the motion, thus compounding his error.

## C. Harmless Error

■ The WCC maintains that any error in the exclusion of evidence concerning Doyle's views on women as electricians is harmless because of the overwhelming evidence that Griffin is an incompetent electrician. That evidence does not, however, render harmless the exclusion of the testimony regarding Doyle's intent. Most of the evidence of Griffin's incompetence comes from the selfsame Doyle, and a jury might weigh that evidence differently if it had reason to believe that Doyle did not want women electricians in his shop. Moreover, the gravamen of Griffin's complaint is that her apparent incompetence was the product of Doyle's animus against women, which led him to neglect her training and then to test her for skills that she did not need in order to do her job.

For these reasons we think that a reasonable jury that heard the excluded evidence might have decided that the plaintiff was fired because of her sex notwithstanding the evidence that she was terminated for incompetence. Accordingly, we must remand the case for a new trial.

## III. CONCLUSION

Cleo Doyle played a central role in the decisionmaking process that led to Griffin's termination. That Randolph Scott and others also participated did not insulate Reba

Evans, the ultimate decisionmaker, from Doyle's influence in deciding whether to fire Griffin. The testimony of three witnesses that Doyle had said women should not be electricians and Griffin's testimony that he had told her she should be at home, barefoot and pregnant, would permit a reasonable jury to infer that Griffin lost her job on account of her sex. Therefore, the magistrate judge's exclusion of that testimony was error, and we cannot rule out the possibility that the error affected the outcome of the trial. Accordingly, we vacate the judgment of the district court and remand the case for a new trial.

*It is so ordered.*

SENTELLE, Circuit Judge, concurring:

I join in my colleagues' judgment reversing the judgment of the district court and remanding for a new trial, but I do so with the utmost reluctance. When we review the evidentiary rulings of a trial judge, we should be ever mindful of the express and stringent standards set forth in Rule 103 of the Federal Rules of Evidence that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." In applying that rule we have held, as have all other circuits, that district judges enjoy broad discretion in their evidentiary rulings, and that we will reverse such rulings "only if [they] are an abuse of discretion." *Carey Canada, Inc. v. Columbia Cas. Co.,* 940 F.2d 1548, 1559 (D.C.Cir.1991). On the record before us, taken as a whole, that abuse of discretion is not apparent.

The evidence excluded by the district court went to the bias of a subordinate and not the decision maker. As the majority recognizes:

> [W]hen the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and legally permissive [*sic*] basis, the bias of the subordinate is not relevant.

*Willis v. Marion County Auditor's Office,* 118 F.3d 542, 547 (7th Cir.1997). The record before us is at least consistent with, if not compellingly supportive of, a conclusion that

Evans, the ultimate decision maker, made the decision to terminate appellant based on an objective test administered with the participation of her union representative. This testing alone would seem enough to break any causal relationship between Doyle's alleged bias and that decision. While appellant is able to tease out of the record tenuous support for the proposition that the causal connection was unbroken, I find that to be a thin reed upon which to rest a reversal of a final judgment based on an evidentiary ruling subject to an abuse of discretion standard. It is most difficult to see this ruling as affecting a "substantial right" of appellant.

In the end, I join the reversal solely because of the theory advanced in Part IIB of my colleagues' opinion. That is, appellee "opened the door" to matters excluded by its own motion *in limine.* *See United States v. Baird,* 29 F.3d 647, 654 (D.C.Cir.1994). Under that theory—advanced, I might add, more articulately by my colleagues than by appellant—I agree that the trial judge's exercise of discretion crossed the boundary of abuse, and I therefore join in the reversal.