# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 15, 2013          Decided July 2, 2013

No. 12-5015

WAYNE L. BRIDGEFORTH,
APPELLANT

v.

SALLY JEWELL, SECRETARY, U.S. DEPARTMENT OF THE
INTERIOR,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00080)

*Kyle G. Ingram*, pro hac vice, argued the cause for appellant. On the briefs was *Morris E. Fischer*.

*Michelle Lo*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen*, *Jr*., U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Concurring opinion filed by *Circuit Judge* HENDERSON.

GRIFFITH, *Circuit Judge*: Wayne Bridgeforth appeals the district court's grant of summary judgment against him on his claim that workplace supervisors unlawfully denied him time-off awards in retaliation for his pursuit of a protected activity. For the reasons set forth below, we affirm the district court.

I

Bridgeforth has been a police officer with the United States Park Service, an agency within the Department of the Interior, since 2002. In 2004, he filed an employment discrimination claim, which settled in May 2007. According to Bridgeforth, once the suit settled, his supervisors retaliated by failing to nominate him for time-off awards (i.e., paid leave) on five occasions over the next three months.

Bridgeforth's retaliation claim is part of a suit that alleged workplace discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. The district court granted summary judgment to the Department of the Interior on all Bridgeforth's claims, *Bridgeforth v. Salazar*, 831 F. Supp. 2d 132, 136 (D.D.C. 2011), and he appealed. On June 15, 2012, a special panel of this court granted the department's motion for summary affirmance on all but the retaliation claim, *Bridgeforth v. Salazar*, No. 12-5015, 2012 WL 2371601 (D.C. Cir. June 15, 2012), which was assigned to this panel for oral argument. We exercise our jurisdiction pursuant to 28 U.S.C. § 1291 and review the district court's grant of summary judgment de novo. *Salazar v. Washington Metro. Area Transit Auth.*, 401 F.3d 504, 507 (D.C. Cir. 2005).

II

During his time with the Park Service, Bridgeforth alleges that he received seven time-off awards: one in 2003, four in 2005, and two in 2006. Bridgeforth argues that five acts he performed in the three months following the May 2007 settlement of his discrimination claims merited time-off awards as well.

- On June 20, Bridgeforth arrested and helped identify a suspect who had assaulted an intoxicated victim.

- On July 20, he volunteered to patrol a local park in plain clothes and, with the assistance of other officers, investigated and arrested two suspects for possession of cocaine and marijuana.

- On August 17, Bridgeforth joined agents of the United States Secret Service in forming a human chain to pull a person out of an overturned car.

- On August 18, he arrested boaters in Washington Harbor "based on his knowledge of Washington trespass law" and prevented other officers from making unlawful arrests.

- On August 24, Bridgeforth assisted in a vehicle pursuit and the subsequent arrest and investigation.

Neither Bridgefoth nor any of the other Park Service officers involved was nominated for a time-off award, or any other form of recognition, for their roles in any of these incidents.

The dry spell soon ended. On September 6, 2007, the Park Service awarded Bridgeforth a written commendation for his work in recovering a stolen vehicle. On October 2, 2007, the Park Service again awarded him a written commendation, this time for assisting in the recovery of illegal weapons and drugs.

III

To sustain a prima facie case of unlawful retaliation, Bridgeforth must show that the Park Service took materially adverse action against him because he participated in protected activity. *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) ("To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice.").

To be materially adverse, the employer's action must be more than "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Stated another way, "not everything that makes an employee unhappy is an actionable adverse action. Minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)) (internal quotation marks omitted). Materially adverse action would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Typically, a materially adverse action in the workplace involves "a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Such actions demonstrate an "objectively tangible harm." *See Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

Failure to nominate for time-off awards does not qualify as the type of objective, tangible harm akin to "firing" or "a significant change in benefits" that is obviously materially adverse.[*] Of course, not all actionable harms are obvious, and a plaintiff alleging retaliation may rely on more subtle actions to make his case. For such alleged harms to be materially adverse, however, they must not be "unduly speculative." *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009). We have addressed this fact pattern before, in *Douglas v. Donovan*. *Id.*

In *Douglas*, we held that an employer's failure to nominate an employee for a Presidential Rank Award did not constitute materially adverse action because the award process was fraught with "inherent uncertainty." *Id.* We noted that the plaintiff could not show a "direct tie between a nomination and an award." *Id.*

---

[*] This retaliation claim alleges materially adverse action that is workplace-related. A retaliation claim need not be confined to workplace action, so long as "a reasonable employee would have found the challenged action materially adverse." *Burlington N.*, 548 U.S. at 68. This distinguishes *discrimination*, which affects the "terms and conditions of employment," *id.* at 64, from *retaliation*, which "encompass[es] a broader sweep of actions." *See Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). As the Court stated in *Burlington Northern*, "Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." 548 U.S. at 67.

Douglas could not demonstrate that if he had been nominated for the award, he would have received it. The criteria for receipt of an award were exacting, and its grant was discretionary and involved many levels of approval. "The Presidential Rank Award process is labyrinthine, with numerous ways to fail, but only one to succeed." *Id.* at 551. Even if Douglas had been nominated, we found that there were too many intervening factors in the selection process to render his receipt of the award likely. This distinguished *Douglas* from *Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007), on which Bridgeforth chiefly relies.

In *Weber*, we held that lowering an employee's performance evaluation could be materially adverse action if the lowered score resulted in the employee not receiving a cash award. The employee in *Weber* demonstrated that she had received the "optional" cash award in each of the preceding three years. *Id.* at 185. The link between performance evaluation and award was so direct that the alleged harm was not speculative, and her claim survived summary judgment. As we stated, "though performance awards are indeed optional with the employer, the record shows [her employer] had opted to give Weber an award in each of the three years preceding 1998, the year in which she complained of discrimination and received no such award." *Id.* Weber had demonstrated that she had received similar positive performance evaluations, and similar cash awards, with a predictable regularity that ceased after she complained of discrimination. Because she could produce evidence of a pattern of receiving such awards that ceased when she engaged in protected activity, the harm she alleged was not speculative.

But this case is more like *Douglas*, because the harm Bridgeforth has alleged is too speculative to constitute materially adverse action. The path from Bridgeforth's alleged acts of bravery to a time-off award is, as in *Douglas*, a labyrinth, with many ways to fail but only one way to succeed. We begin with

the highly subjective standards for a time-off award. According to the Department of the Interior Memorandum regarding "awards and Recognition Program[s]," the following are "examples of . . . criteria" for the award:

> [m]aking a high quality contribution involving a difficult or important project or assignment; [d]isplaying special initative . . . ; [e]nsuring the mission . . . is accomplished during a difficult period . . . ; [u]sing initiative and creativity in making improvements in a product, activity program, or service; [p]roviding exceptional service . . . ; [d]eveloping new procedures or guidelines that improve the quality of services provided . . . ; [o]ther comparable employee achievements.

J.A. 121-22. What's more, these vague measures must be passed upon by a supervisor, reviewed by a captain, and, depending on the amount of time-off at issue, approved by the Chief of Police. This is a far cry from the award that Weber could rightly claim based on achievement of an objective measure. The subjective nature of the award criteria makes it hard for us to imagine that the mere failure to nominate would be governed by *Weber*.

Bridgeforth's claim is especially weak, because he has failed to produce any evidence that would establish a direct and non-speculative connection between action, nomination, and award. Although he received seven time-off awards over a three-year period preceding the summer of 2007, he tells us nothing about them that would cast suspicion upon why he was not nominated for such an award during the three months following the settlement of his claims. He has provided no evidence of how frequently or consistently he was nominated or the rate at which nomination led to receipt of the award. Nor has he shown that such nominations (or awards) occurred with a predictable regularity that ceased for three months in the summer of 2007,

but then resumed afterwards. Bridgeforth makes no effort to explain why the past history of scattered awards even raises an inference that he was entitled to more during this brief period in the summer of 2007. Finally, that no other Park Service officer was commended for any of the acts Bridgeforth argues merited his nomination for a time-off award undermines his claim.

Bridgeforth argues that the district court erred by finding in *Douglas* a categorical rule that an employer's failure to nominate an employee for a time-off award could never be unlawful. If that is what the district court did, it erred, because we found no such rule in *Douglas*. But we need no such rule to affirm the district court's judgment. As *Burlington Northern* admonishes, in retaliation claims, "[c]ontext matters." *Burlington N.*, 548 U.S. at 69. The context here refutes Bridgeforth's claim that the failure to nominate him for a time-off award was an adverse action.

Bridgeforth's allegation that his employer's failure to nominate him for a time-off award constituted materially adverse action falls between *Douglas* and *Weber*, but it is much closer to *Douglas*. On different facts, Bridgeforth might have shown that he suffered adverse action by producing evidence that he always received nominations for certain types of work, or that he received such nominations with a predictable regularity, as did the plaintiff in *Weber*, and that upon being nominated, he always received a time-off award. But Bridgeforth has produced no such evidence. He has not shown that his nominations for time-off awards occurred predictably. On the contrary, he offers a scattered and incomplete award history. He also has not shown that each time he received a nomination, he received the time-off award. Again, the evidence demonstrates that approval for such awards required several supervisors to exercise their discretion in the same way. Thus, while Bridgeforth's receipt of a time-off award may be less speculative than Douglas's receipt of a

Presidential Rank Award, Bridgeforth still has not shown the entitlement to an award that we require. As such, he cannot demonstrate that the failure of his employer to nominate him for time-off awards materially affected the terms of his employment.

We note the limited nature of our holding. There is no categorical rule preventing a plaintiff from demonstrating materially adverse action simply because there is no direct correlation between nomination for an award and receipt of a tangible benefit.

## IV

For the foregoing reasons, we affirm the order of the district court granting summary judgment against Bridgeforth on his retaliation claim.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

I agree with the majority opinion that the district court correctly granted summary judgment to the government because appellant Wayne Bridgeforth's retaliation claim is, at best, speculative. I write separately, however, because I disagree with the majority's suggestion that the case is close because it "falls between" *Douglas v. Donovan*, 559 F.3d 549 (2009), and *Weber v. Batista*, 494 F.3d 179 (D.C. Cir. 2007). Maj. Op. at 8. The failure to nominate Bridgeforth for time-off awards was no more an adverse employment action than was the employee's failure to make the cut for a Presidential Rank Award in *Douglas.* Like the "indefinable star qualities" of "outstanding leadership and innovation" that *Douglas*'s award was intended to reward—the criterion for U.S. Park Police time-off awards —"personal effort that contributes to the quality, efficiency, or economy of Government operations"— is "by [its] very nature subjective." *Douglas*, 559 F.3d at 553; JA 119. In *Donovan*, we made clear that the decision whether to nominate an employee for such a subjective award does not by itself constitute the sort of "adverse employment action" necessary to make out a discrimination or retaliation claim. "[T]he inherent uncertainty in the [award] process means there can be no direct tie between a nomination and an award." 559 F.3d at 553. Accordingly, an employee "must go the further step of demonstrating how the decision . . . caused such an objectively tangible harm." *Douglas*, 559 F.3d at 553. In *Weber*, the plaintiff did just that, producing evidence that her lower performance ratings after she complained of discrimination caused her to lose a performance award that was based on those ratings. Like the *Douglas* plaintiff, however, Bridgeforth offered no evidence of the necessary causal link and his claim should therefore be easily—and summarily—rejected.