# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-5169

September Term, 2023

FILED ON: JUNE 21, 2024

DORIAN VAN HORN,
APPELLANT

v.

CARLOS DEL TORO, IN HIS OFFICIAL CAPACITY
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-38)

Before: SRINIVASAN, *Chief Judge*, WILKINS and WALKER, *Circuit Judges*.

## JUDGMENT

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED** in part and **VACATED** in part and that the case be **REMANDED** for further proceedings consistent with this judgment.

I.

A.

Dorian Van Horn was employed at the Naval Criminal Investigative Service (NCIS) from 1987 until late 2012. From 2002 onward, she worked in NCIS's Washington, D.C. office.

In January 2012, when Van Horn was 47 years old, she was assigned to a position in NCIS's Naples, Italy office. She had not applied for the transfer and requested that it be reconsidered, citing the fact that her husband's job required him to be in Washington, D.C. for the next two years. Accepting the Naples position thus would have forced her to live apart from her

husband and their children to be away from one parent during that time. Before receiving a formal response, Van Horn announced that she could not accept the Naples position because she planned to retire that September.

Having declared her intention to retire in September, Van Horn requested leave for most of August and September. Her supervisor, Matthew Lascell, granted her request. Around that time, Van Horn contacted an Equal Employment Opportunity (EEO) counselor, initiating the process to bring an age discrimination complaint challenging her transfer to Naples.

John Hogan, NCIS's Assistant Director of Human Resources, eventually denied Van Horn's request for reconsideration of the Naples transfer. He left Van Horn with three options: (i) report to Naples, (ii) retire by July 31, 2012, or (iii) stay with NCIS and accept some other transfer because NCIS had already backfilled her current position in the District of Columbia. In late June, after Hogan rendered his decision, Lascell rescinded his approval of Van Horn's August and September leave. He did so, on his telling, because he would no longer be Van Horn's supervisor after the end of July.

Van Horn failed to report to Naples as required. NCIS thus assigned her to a temporary detail in Norfolk, Virginia. Van Horn's Norfolk supervisor approved the leave she had previously requested, and Van Horn therefore took most of August and September off. Instead of retiring at the end of September, though, Van Horn returned to the agency. At that point, she was assigned to an opening in Great Lakes, Illinois. Rather than accept the Great Lakes transfer, Van Horn retired, effective October 31, 2012.

B.

Van Horn filed this lawsuit in January 2018. *Van Horn v. Del Toro*, No. 18-cv-38, 2023 WL 4156742, at *2 (D.D.C. June 23, 2023). The operative complaint asserts claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, for (i) hostile work environment; (ii) disparate treatment based on the transfer to Naples; (iii) disparate treatment based on the transfer to Norfolk; (iv) disparate treatment based on the transfer to Great Lakes; (v) retaliation for filing an EEO complaint, with the retaliatory acts being the Norfolk and Great Lakes transfers and the temporary cancellation of her leave; and (vi) constructive discharge. The district court dismissed Van Horn's hostile work environment claim at the pleading stage but otherwise allowed the case to proceed. *Van Horn*, 2023 WL 4156742, at *2.

Following discovery, the court granted summary judgment to NCIS on all remaining claims. Applying a line of our cases beginning with *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), the court held that a lateral transfer is not a cognizable adverse employment action under the ADEA unless accompanied by some other "objectively tangible harm" such as a diminution in pay or benefits. *Van Horn*, 2023 WL 4156742, at *6–7 (citation and internal quotation marks omitted). The court thought the Norfolk transfer fell short of that standard, despite Norfolk's

2

location away from the District of Columbia and the fact that Van Horn described her Norfolk assignment as one in which she "was not given any meaningful work." Van Horn Decl. ¶ 12, J.A. 267; *Van Horn*, 2023 WL 4156742, at *7. And the court likewise rejected the Naples and Great Lakes transfer claims, reasoning that, because those transfers "never occurred," Van Horn did not experience a "material employment disadvantage." *Van Horn*, 2023 WL 4156742, at *6 (citation and internal quotation marks omitted). According to the court, those conclusions required granting summary judgment to NCIS as to both Van Horn's discrimination claims and her retaliation claims. *Id.*

The court next held that Van Horn's alleged constructive discharge also was not an adverse employment action. That action, the court reasoned, was premised "upon the occurrence of multiple lateral transfers which do not constitute adverse employment actions themselves." *Id.* at *8. The court added that "even if . . . the[] lateral transfers constituted adverse employment actions," Van Horn still had not shown enough for a constructive discharge. *Id.*

Given the court's various adverse-action determinations against Van Horn, her retaliation claim remained live only to the extent that it was predicated on the temporary cancellation of her leave, an action that the court had yet to address. The court granted summary judgment to NCIS on that claim as well. In the court's judgment, there was no evidence that Lascell was aware of Van Horn's EEO activity at the time he cancelled her leave, so his action could not be understood as retaliation for that activity. *Id.* at *9–10. This appeal followed.

II.

A.

The parties agree that the district court applied the wrong adverse-action standard to Van Horn's discrete discrimination claims. The district court, as noted, relied on our *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), line of decisions. In *Chambers v. District of Columbia*, 35 F.4th 870, 873–82 (D.C. Cir. 2022) (en banc), however, our en banc court overruled *Brown* and held that Title VII does not require a plaintiff to demonstrate that she suffered objectively tangible harm to sustain a discrimination claim related to a forced transfer. Instead, we held, a plaintiff need only show that her employer discriminated against her with respect to the "terms, conditions, or privileges" of her employment. *Id.* at 875. *Chambers* held specifically that a "job transfer" satisfies that standard. *Id.* at 874.

The Supreme Court then considered the same issue in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). *Muldrow* clarified that Title VII requires an employee to show only that a job transfer "brought about some 'disadvantageous' change in an employment term or condition." *Id.* at 974 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). But, the Court emphasized, "[w]hat the transferee does not have to show . . . is that the harm incurred was significant"—"[o]r serious, or substantial, or any other similar adjective." *Id.* (citation and internal

quotation marks omitted). *Muldrow* recognized that "[m]any forced transfers" will clear that bar. *Id.*

All three transfers at issue here constitute adverse employment actions under *Muldrow*. An employee who is forced to take an unwanted transfer to a new job in another state or across the world suffers a "disadvantageous change" to a term or condition of her employment. *Muldrow*, 144 S. Ct. at 974 (citation and internal quotation marks omitted). And Van Horn also avers that she was not given any meaningful work to do in Norfolk. That, too, is a cognizable harm within the scope of *Muldrow*.

It is of no consequence that *Muldrow* was a private-sector Title VII case whereas this is a federal-sector ADEA case. We have always interpreted Title VII and the ADEA identically as far as adverse actions go, and we have likewise always treated the private-sector and federal-sector provisions of those statutes alike in that respect. *See George v. Leavitt*, 407 F.3d 405, 410–11 (D.C. Cir. 2005); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008); *Miller v. Clinton*, 687 F.3d 1332, 1336–37 (D.C. Cir. 2012). Understandably, no one asks us to do otherwise here.

Nor does it matter to the adverse-action analysis that the Naples and Great Lakes transfers were never effectuated. As *Singletary v. Howard University*, 939 F.3d 287, 300 (D.C. Cir. 2019), recognized, an adverse employment action becomes cognizable when the employer provides notice of the action to the employee, "regardless of whether the employer follows through." *See also Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." (cleaned up)); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) (Gorsuch, J.) ("[A] claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."). Accordingly, the Naples and Great Lakes transfers were adverse employment actions on announcement, no matter that Van Horn never went to Naples and retired rather than relocate to Great Lakes.

Because the transfers Van Horn challenges are adverse actions under the ADEA, we vacate the district court's grant of summary judgment to NCIS on Van Horn's discrimination claims and remand for the district court to consider the second step of the analysis: whether those adverse actions were motivated by unlawful age discrimination.

B.

The district court's application of the wrong adverse-action standard to the transfers also led it to err in holding that there was no basis for Van Horn's constructive discharge claim. As explained, the transfers were adverse actions. So on remand, the district court must assess whether the transfers were motivated by unlawful discrimination before it can determine whether they can serve as a predicate for the constructive discharge claim. To be sure, the court also stated in passing that Van Horn could not make out a constructive discharge claim even assuming the transfers were

4

adverse actions. *Van Horn*, 2023 WL 4156742, at *8. But the court did not elaborate on that statement, and the court cited in support of it, among other decisions, *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002), which turned on the application of the now-abrogated *Brown* standard. We thus cannot discern the basis for the court's conclusion that Van Horn could not make out a constructive discharge claim even if the transfers were adverse actions. That conclusion, moreover, is far from self-evident: as we have explained, "an illegal reassignment, if it produces sufficient hardship and causes an unwilling resignation, can support [a constructive discharge] claim." *Frazier v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 159 n.29 (D.C. Cir. 1982).

C.

The Norfolk and Great Lakes transfers also constitute adverse actions for purposes of Van Horn's retaliation claims. An adverse action in a retaliation case must be "materially adverse," in that it must be the kind of action that could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *cf. Muldrow*, 144 S. Ct. at 976 (adverse-action standard for retaliation claims differs from standard for discrimination claims). Both transfers meet that standard: a transfer to a different state, even if temporary, is not a "[m]inor" or "trivial" burden, *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (citations and internal quotation marks omitted), or so a reasonable jury could conclude, particularly given Van Horn's family situation. We therefore vacate the district court's grant of summary judgment to NCIS on Van Horn's retaliation claims as based on the Norfolk and Great Lakes transfers.

D.

Finally, while we otherwise set aside the district court's grant of summary judgment to NCIS, we affirm the grant of summary judgment to NCIS as to Van Horn's retaliation claim insofar as it is predicated on the temporary cancellation of her leave. Lascell cancelled Van Horn's leave on June 28, 2012, and his testimony is that he did not become aware of Van Horn's EEO activity until "late July or early August." Lascell Decl. p. 2, J.A. 604. While Van Horn contends that Lascell spoke to Hogan before cancelling her leave and that Hogan "had awareness of" her EEO complaint, Van Horn Reply Br. 11, Hogan avers that he did not become aware of Van Horn's EEO activity until July 24—after Lascell cancelled Van Horn's leave, Hogan Decl. ¶ 26, J.A. 530–31. Van Horn cites no evidence to the contrary. As a result, there is no genuine factual dispute that neither Lascell nor Hogan was aware of Van Horn's protected activity when Lascell cancelled her leave. And without knowledge that Van Horn had engaged in protected activity, Lascell could not have retaliated against her for that activity. *See Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011); *Hairston v. Vance-Cooks*, 773 F.3d 266, 275 (D.C. Cir. 2014).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

                **FOR THE COURT:**
                Mark J. Langer, Clerk

BY:    /s/
             Daniel J. Reidy
             Deputy Clerk